The Full Commission has reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Morgan S. Chapman and the briefs and arguments on appeal. The appealing party has shown good grounds to reconsider the evidence. Having reconsidered the evidence of record, the Full Commission reverses the Deputy Commissioner's Opinion and Award and enters the following Opinion and Award.
 ***********
The Full Commission finds as facts and concludes as matters of law the following, which were entered into by the parties at the hearing on 11 June 1997 as:
 STIPULATIONS
1. The parties are subject to and bound by the provisions of the North Carolina Workers' Compensation Act.
2. An employer-employee relationship existed between plaintiff and defendant-employer at all relevant times herein.
3. American Home Assurance Company was the compensation carrier on the risk, and AIG Claim Services was the third party administrator.
4. The date of alleged injury was 16 January 1996.
5. Plaintiff's average weekly wage on the relevant dates was $519.23, yielding a compensation rate of $346.13.
6. The parties agreed that should the claim be found to be compensable, plaintiff would be owed temporary total disability benefits for the following dates: 26 January 1996 through 4 February 1996; 24 April 1996 through 22 May 1996, and; 20 October 1996 through 24 November 1996.
7. The parties also stipulated to all of Dr. Moorefield's, Dr. Rhyne's and Dr. Livingston's records, and records from Rehability.
 ***********
Based upon all of the competent evidence in the record, the Full Commission makes the following:
 FINDINGS OF FACT
1. As of January 1996, plaintiff, who was twenty-seven years old and a college graduate, had been working for defendant-employer for approximately six months. The company imported and exported cargo by air and sea for customers. Plaintiff was originally hired to handle imported freight, but his duties gradually changed to include working with exported cargo, as well. His job duties included unloading trucks, moving freight around the warehouse, measuring, stacking and consolidating freight, handling paperwork going to customs and preparing documents. The freight included, but was not limited to, cardboard boxes, crates, and rolls of fabric. The lighter cargo was unloaded and moved around the warehouse by hand. The heavier cargo, weighing up three or four thousand pounds, was moved with a pallet jack.
2. When plaintiff arrived at work on the morning of 16 January 1996, his back felt fine. He had previously never suffered any disabling injury to his back.
3. On the morning of 16 January 1996, plaintiff unloaded material from trucks and moved many items around the warehouse. Around lunchtime that day, plaintiff began to experience low back pain, which worsened over time. At that time, plaintiff thought he had only a sprain, or a pulled muscle and did not believe then that he had a serious back problem.
4. By 17 January or 18 January 1996, plaintiff's back pain had worsened to the point that he reported it to his supervisor, Ms. Nancy Rice, and inquired about seeking medical attention. At that time, plaintiff was unsure of the exact cause of his injury, but all he could attribute it to was his physical work in the warehouse.
5. Defendant-employer did not file an Industrial Commission Form 19 Report of Injury until 30 May 1996. It did so at this time only after plaintiff made several requests of his new supervisor, Mr. Michael Huffstetler. The Form 19 indicates that plaintiff informed his supervisor of his back injury on 17 January 1996; and that he injured his back while moving freight. Ms. Rice, plaintiff's supervisor on 16 January 1996, testified that she did not know what a Form 19 was until the morning of the hearing, when her lawyer showed her one.
6. On 22 January 1996, plaintiff was examined by Dr. Michael B. Livingston regarding his ongoing back pain. Dr. Livingston prescribed medication and gave him a return appointment. Dr. Livingston's office notes indicate that plaintiff reported that his symptoms had started after helping his girlfriend up. However, the Full Commission does not place any weight in this portion of Dr. Livingston's notes because both he and plaintiff testified that they did not recall plaintiff making such a statement regarding the cause of his injury. Additionally, Dr. Livingston testified that he usually dictated notes the same day he examines a patient based on his memory and nurse's notes, but that he dictated this record the next day and could not now remember the encounter.
7. Plaintiff's condition did not improve with the medication prescribed by Dr. Livingston, so he then reported to Dr. William G. Moorefield, Jr., an orthopedic surgeon, on 26 January 1996. Plaintiff informed Dr. Moorefield that his back pain began on 16 January 1996. Dr. Moorefield diagnosed plaintiff's condition as a sacroiliac joint sprain and lumbosacral sprain and removed plaintiff from work for a week, prescribing medication and ordering physical therapy.
8. Plaintiff returned to work on 5 February 1996 and was able to work for over two months before he sought further medical treatment. On 24 April 1996, he returned to Dr. Moorefield and indicated that the nature of his pain had changed in that he was having more pain in his left leg. Dr. Moorefield ordered a CT scan which revealed a ruptured disk at L4-5. He then recommended a decompression surgery, which was performed on 9 May 1996.
9. Following the operation, plaintiff's condition and he was able to return to work. However, plaintiff's improvement was temporary as his pain resurfaced in early September. On 11 September 1996, plaintiff returned to Dr. Moorefield who prescribed physical therapy, rest and additional medication. Despite this course of conservative treatment, plaintiff's pain continued to grow worse.
10. Because of his worsening condition, plaintiff sought additional treatment on 30 September 1996. Due to the fact that Dr. Moorefield was not available, plaintiff was examined by Dr. Alfred L. Rhyne, III. Dr. Rhyne ordered an MRI which revealed a recurrent ruptured disk at the same level as plaintiff's earlier decompression surgery.
11. As second surgery was performed by Dr. Rhyne on 25 November 1996. As with his previous surgery, plaintiff's condition improved following this procedure, although he continued to experience some back pain.
12. Plaintiff reached maximum medical improvement on 14 April 1997 and was assigned a fifteen percent (15%) permanent partial disability rating to his back by Dr. Rhyne at that time.
13. Dr. Moorefield and Dr. Rhyne opined that plaintiff's back injury was caused by his work unloading trucks and moving cargo while working for defendant-employer on the morning of 16 January 1996.
14. Plaintiff's back injury occurred while he was working in the warehouse unloading trucks and moving cargo the morning of 16 January 1996. The injury either occurred from plaintiff's work with a particular piece of cargo or from a series contemporaneous events which occurred within a cognizable time period on that date.
15. On 16 January 1996, plaintiff sustained an injury by accident arising out of and in the course of his employment with defendant-employer in the form of a specific traumatic incident.
16. As the result of his specific traumatic incident of 16 January 1996, plaintiff was unable to earn wages in his former position with defendant-employer or in any other employment for the following periods: 26 January 1996 through 4 February 1996; from 24 April 1996 through 22 May 1996; and from 20 October 1996 through 24 November 1996.
17. Defendants had actual notice of plaintiff's injury as early as 17 January or 18 January 1996. Plaintiff's delay in giving written notification to his employer is reasonably excused as he did not initially know the cause of his back injury believed that it would resolve. Defendants were not prejudiced by this delay.
 ***********
Based upon the foregoing findings of fact, the Full Commission concludes as follows:
 CONCLUSIONS OF LAW
1. Plaintiff's delay in giving written notification of his injury and claim to his employer was reasonably excused and defendants were not prejudiced by this delay. G.S. § 97-22.
2. On 16 January 1996 plaintiff sustained an injury by accident arising out of and in the course of his employment with defendant-employer in the form of a specific traumatic incident. G.S. § 97-2(6).
3. As the result of his specific traumatic incident of 16 January 1996, plaintiff is entitled to have defendants pay temporary total disability compensation at the rate of $346.13 per week for the following periods: 26 January 1996 through 4 February 1996; from 24 April 1996 through 22 May 1996; and from 20 October 1996 through 24 November 1996. G.S. § 97-29.
4. As the result of his specific traumatic incident of 16 January 1996, plaintiff is entitled to have defendants pay permanent partial disability compensation at the rate of $346.13 per week for a total of forty-five (45) weeks for the fifteen percent (15%) disability rating to his back. G.S. § 97-31(23).
5. As the result of his specific traumatic incident of 16 January 1996, plaintiff is entitled to have defendants pay for all medical expenses incurred. G.S. § 97-25; G.S. § 97-25.1
 ***********
Based upon the foregoing findings of fact and conclusions of law, the Full Commission reverses the holding of the Deputy Commissioner and enters the following:
 AWARD
1. Defendants shall pay plaintiff temporary total disability compensation at the rate of $346.13 per week for the following periods: 26 January 1996 through 4 February 1996; from 24 April 1996 through 22 May 1996; and from 20 October 1996 through 24 November 1996. Subject to the attorney's fee approved herein, this compensation has accrued and shall be paid to plaintiff in a lump sum.
2. Defendants shall pay plaintiff permanent partial disability compensation at the rate of $346.13 per week for a total of forty-five (45) weeks for the fifteen percent (15%) disability rating to his back. Subject to the attorney's fee approved herein, this compensation has accrued and shall be paid to plaintiff in a lump sum.
3. Defendants shall pay for all medical expenses incurred by plaintiff as a result of his 16 January 1996 specific traumatic incident.
4. A reasonable attorney's fee of twenty-five percent (25%) of the compensation awarded to plaintiff is approved for counsel for plaintiff and shall be deducted from the amounts owed to plaintiff and paid directly thereto.
5. Defendants shall pay the costs.
 S/ _________________ CHRISTOPHER SCOTT COMMISSIONER
CONCURRING:
S/ _________________ J. HOWARD BUNN, JR. CHAIRMAN
S/ _________________ THOMAS J. BOLCH COMMISSIONER